**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| AUDIOLOGY DISTRIBUTION LLC DBA HEARUSA; MEDPLUS HEALTH SOLUTIONS, LLC; and HARMONY HEARING SERVICES LLC, | )<br>)<br>)<br>) CIVIL ACTION NO. 8:20-cv-00499-<br>) MSS-TGW<br>) |
| Plaintiffs, | )<br>) JURY TRIAL DEMANDED |
| v. | )<br>) |
| PETER STEPHENS and JASON DAWSON, as individuals, CENTRALCOMP SERVICES LLC, a Tennessee Limited Liability Company, and UNIFIED HEARING SOLUTIONS LLC, a Florida Limited Liability Company | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY, AND SUPPORTING BRIEF

# TABLE OF CONTENTS

**Page**

FACTUAL BASIS FOR MOTION ................................................................................ 1

CONDUCT TO BE ENJOINED ................................................................................ 5
    A.    Background Re Stephens, Dawson, MedPlus, and Harmony ........................... 5
    B.    Evidence of Misconduct ................................................................................ 6
        1.    Defendants Divert Business to Corporate Defendants........................ 6
            i)    CentralComp and Unified Are Formed To Divert
                  Business ...................................................................... 6
            ii)    Defendants Divert Plaintiffs' Business to CentralComp
                  and Unified Using MedPlus and Harmony Employees
                  and Resources and False Statements........................... 7
        2.    Defendants Create Affiliated Networks To Further Their
            Scheme .................................................................................... 8
        3.    Defendants Wrongfully Solicit MedPlus/Harmony Employees
            to Corporate Defendants and Affiliated Networks .............................. 9
        4.    Defendants Falsely Represent, Disparage and/or Improperly
            Use Plaintiffs' Resources, Information, and Intellectual
            Property.................................................................................. 10
        5.    Stephens Improperly Accesses and Alters Plaintiffs' Computer
            Systems and Files..................................................................... 11

LEGAL ARGUMENT.................................................................................................... 13
    A.    Legal Standards.............................................................................................. 13
    B.    The TRO and PI Should Be Granted. ........................................................... 14
        1.    Plaintiffs will likely prevail on their claims...................................... 15
        2.    Plaintiffs Are Suffering Irreparable Harm ........................................ 21
        3.    The Balance of Harms Favors Plaintiffs............................................ 22
        4.    The Public's Interest is Served by Protecting Plaintiffs' Trade
            Secrets, Preventing Unfair Competition, and Holding Parties to
            their Contractual Obligations................................................... 23

CERTIFICATION OF EFFORTS TO GIVE NOTICE ................................................ 24

CONCLUSION............................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

CASES

*ACR Elecs., Inc. v. DME Corp.*,
No. 11-62591-CIV, 2012 U.S. Dist. LEXIS 201353 (S.D. Fla. Oct. 31,
2012) ........................................................................................................................23

*Advantus, Corp. v. Sandpiper of Cal., Inc.*,
No. 3:18-cv-1368-J-34JRK, 2019 U.S. Dist. LEXIS 169337 (M.D. Fla.
Sept. 30, 2019) ........................................................................................................20

*Alt. Med. Integration Grp., L.P. v. Langford*,
No. 8:13-cv-2909-T-33AEP, 2013 U.S. Dist. LEXIS 164487 (M.D. Fla.
Nov. 19, 2013) ........................................................................................................23

*AutoNation, Inc. v. O'Brien*,
347 F. Supp. 2d 1299 (S.D. Fla. 2004) ...................................................................22

*Brown v. Kinross Gold U.S.A., Inc.*,
531 F. Supp. 2d 1234 (D. Nev. 2008) .....................................................................16

*Cox v. CSX Intermodal, Inc.*,
732 So. 2d 1092 (Fla. 1st DCA 1999) .....................................................................13

*Dell Inc. v. BelgiumDomains, LLC*,
Case No. 07-22674, 2007 U.S. Dist. LEXIS 98676 (S.D. Fla. Nov. 20,
2007) ........................................................................................................................22

*Dimare Ruskin, Inc. v. Del Campo Fresh, Inc.*,
2010 WL 2465158, at *1 (M.D. Fla. June 15, 2010) ..............................................14

*Dotolo v. Schouten*,
426 So. 2d 1013 (Fla. 2d DCA 1983) ......................................................................21

*Everest Nat'l Ins. Co. v. Rockhill Ins. Co.*,
No. 8:16-cv-2803-T-35JSS, 2016 U.S. Dist. LEXIS 189685 (M.D. Fla.
Oct. 5, 2016) .......................................................................................................21, 23

*Ferrero v. Associated Materials Inc.*,
923 F.2d 1441 (11th Cir. 1991) ..............................................................................21

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*,
320 F.3d 1205, 1210 (11th Cir. 2003) ....................................................................14

*Hatfield v. AutoNation, Inc.*,
939 So. 2d 155 (Fla. 4th DCA 2006) .............................................................23

*Heron Dev. Corp v. Vacation Tours, Inc.*,
16-20683-CIV-MORENO, 2017 U.S. Dist. LEXIS 196869 (S.D. Fla. Nov.
30, 2017) ..................................................................................................20

*Int'l Hair & Beauty Sys., LLC v. Simply Organic, Inc.*,
No. 8:11-cv-1883-30AEP, 2011 U.S. Dist. LEXIS 127336 (M.D. Fla. Sep.
26, 2011) ..................................................................................................15

*Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*,
No. 13-60524-CIV-DIMITROULEAS, 2013 U.S. Dist. LEXIS 201882
(S.D. Fla. Aug. 9, 2013) ...........................................................................19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*,
808 F. Supp. 1555 (S.D. Fla. 1992), *aff'd*, 2 F.3d 405 (11th Cir. 1993)...........18

*New Country Motor Cars of Palm Beach v. Beresford*,
No. 17-80856-CIV-MARRA/MATTHEWMAN, 2019 U.S. Dist. LEXIS
147928 (S.D. Fla. May 3, 2019) ...............................................................18

*Phoseon Tech., Inc. v. Healthcote*,
No. 3:19-cv-2081-SI, 2019 U.S. Dist. LEXIS 221633 (D. Or. Dec. 27,
2019) ........................................................................................................24

*Schiavo ex rel. Schindler v. Schiavo*,
403 F.3d 1223 (11th Cir. 2005) ................................................................13

*Solar Cells, Inc. v. True N. Partners, LLC*,
No. 19477, 2002 Del. Ch. LEXIS 38 (Del. Ch. Apr. 5, 2002)..........................15

**RULES**

Fed. R. Civ. P. 65...............................................................................................1

Fed. R. Civ. P. 65(b)(1)(A) ...............................................................................24

Fed. R. Civ. P. 65(b)(1)(B) ...............................................................................24

Local Rule 4.05.............................................................................................1, 14

Local Rule 4.06...................................................................................................1

**STATUTES**

15 U.S.C. § 1125(a) ................................................................................20

18 U.S.C. § 1030(a)(2)(c) ........................................................................19

18 U.S.C. §§ 1030(a)(5)(B), (a)(5)(C), (g) ..............................................19

18 U.S.C. § 1836(b)(3)(A)(i) ....................................................................17

18 U.S.C. § 1839(3) ..................................................................................18

18 U.S.C. § 1839(5), (6) ...........................................................................18

Fla. Stat. § 688.002(1), (2) .......................................................................18

Fla. Stat. § 688.002(2)(a), (2)(b) ..............................................................19

Fla. Stat. § 688.003(1) ..............................................................................17

FUTSA .................................................................................................17, 18

Lanham Act ..........................................................................................13, 20

Unfair and Deceptive Practices under the Lanham Act ............................20

Uniform Trade Secrets Act (iii) ................................................................13

## TABLE OF EXHIBITS

**Affidavit of April Aldeen ("Aldeen Aff.")**
- **Ex. A:** Public records regarding "Health Pay Services LLC"
- **Ex. B:** Screenshots of MedPlus's Google Drive from after Feb. 13, 2020

**Affidavit of Danielle Allman ("Allman Aff.")**
- **Ex. A:** Redacted email chain involving MedPlus customer from Jan. 31 to Feb. 5, 2020
- **Ex. B:** Redacted email chain involving MedPlus customer from Feb. 11, 2020 Dec. 12, 2019 to Feb. 11, 2020
- **Ex. C:** Redacted Email chain involving MedPlus customer from Dec. 13, 2019 to Feb. 21, 2020

**Affidavit of Jennifer Carrington ("Carrington Aff.")**
- **Ex. A:** Letter from P. Stephens to MedPlus customers dated Feb. 5, 2020

**Affidavit of Brianna Davis ("Davis Aff.")**

**Affidavit of Patrick Hanrahan ("Hanrahan Aff.")**
- **Ex. A:** Letter from P. Stephens to MedPlus customers dated Feb. 5, 2020

**Affidavit of Kyle Kennedy ("Kennedy Aff.")**
- **Ex. A:** Redacted excerpts from the Employment Agreement between AudRX, LLC and P. Stephens dated Mar. 31, 2016
- **Ex. B:** Redacted excerpts from the Employment Agreement between AudRX, LLC and J. Dawson dated Mar. 31, 2016
- **Ex. C:** Redacted excerpts from the Membership Interest Purchase Agreement between Audiology Distribution LLC and K. Kennedy, M. Lapin, and J. Daly dated Feb. 28, 2018, and Disclosure Schedule thereto

**Affidavit of Joseph Noel ("Noel Aff.")**
- **Ex.:** ION Healthcare Solutions, Inc.'s Shareholders' Agreement and Amendment thereto

**Declaration of Yuri Mikulka ("Mikulka Decl.")**
- **Ex. A:** Letter from C. Hall to P. Stephens dated Feb. 13, 2020
- **Ex. B:** Letter from C. Hall to J. Dawson dated Feb. 13, 2020
- **Ex. C:** Letter from Y. Mikulka to P. Stephens dated Feb. 14, 2020
- **Ex. D:** Letter from Y. Mikulka to J. Dawson dated Feb. 14, 2020
- **Ex. E:** Email chain between W. Perrin, D. Lisko, and J. Baruch from Feb. 17 to 21, 2020
- **Ex. F:** Letter from Y. Mikulka to CentralComp Services LLC dated Feb. 19, 2020
- **Ex. G:** Letter from Y. Mikulka to Unified Hearing Solutions LLC dated Feb. 19, 2020.
- **Ex. H:** Letter from Y. Mikulka to D. Lisko, and J. Baruch dated Feb. 26, 2020

- **Ex. I:** Email chain between W. Perrin, D. Lisko, and J. Baruch from Feb. 27 to March 3, 2020
- **Ex. J:** Email from W. Perrin to CentralComp Services LLC dated Mar. 3, 2020
- **Ex. K:** Email from W. Perrin to Unified Hearing Solutions LLC dated Mar. 3, 2020

**Declaration of Wade Perrin ("Perrin Decl.")**
- **Ex. A:** Screenshots of the website centralcomp.com from Mar. 3, 2020
- **Ex. B:** Tennessee state public records regarding CentralComp Services LLC
- **Ex. C:** Washington state public records regarding CentralComp Services LLC
- **Ex. D:** Screenshots of the website http://unifiedhearing.com/services from Mar. 3, 2020
- **Ex. E:** Florida state public records regarding Unified Hearing Solutions LLC
- **Ex. F:** Florida state public records regarding Unified Hearing Solutions LLC
- **Ex. G:** Allegiant Medical Network's entry on National Provider Identifier Registry
- **Ex. H:** Florida public records regarding Health Pay Services LLC
- **Ex. I:** Health Pay Services' Application for Registration of Fictious Name
- **Ex. J:** Florida public records regarding Health Pay Services LLC
- **Ex. K:** Tennessee public records regarding Waterford Comp Services Inc.
- **Ex. L:** Screenshots of the website https://taledmedicalliving.com from Mar. 3, 2020

Plaintiff Audiology Distribution LLC dba HearUSA ("Audiology") and its wholly owned subsidiaries MedPlus Health Solutions, LLC ("MedPlus") and Harmony Hearing Services LLC ("Harmony") (collectively, the "Plaintiffs"), pursuant to Fed. R. Civ. P. 65 and Local Rules 4.05 and 4.06, respectfully ask this Court to enter a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") against Defendants CentralComp Services LLC ("CentralComp"), Unified Hearing Solutions LLC ("Unified"), Pete Stephens ("Stephens"), and Jason Dawson ("Dawson").[1]

The present motion presents an injury so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible. As just one example, Defendants are engaged in the destruction and manipulation of evidence and withholding essential company information necessary to prevent business interruption and customer service. Moreover, the Individual Defendants contractually agreed that a TRO would issue in exactly these circumstances.

## FACTUAL BASIS FOR MOTION

MedPlus and Harmony are affiliate companies that serve the workers' compensation claims processing industry. MedPlus offers workers' compensation claims processing services; Harmony supplies hearing aids for work-related hearing loss claims. After selling their interests in MedPlus and Harmony, Stephens and Dawson remained as Presidents reporting to the new owners under employment agreements with non-compete provisions. Instead of fulfilling their duties, however, Stephens and Dawson together concocted an elaborate scheme

---

[1] CentralComp and Unified together comprise the "Corporate Defendants," and Stephens and Dawson together comprise the "Individual Defendants."

to divert customers, business and employees away from MedPlus and Harmony and to competing companies in which they have a financial stake, CentralComp and Unified. In doing so, they used the Plaintiffs' resources, confidential information, trade secrets and employees, and they made false representations that MedPlus and CentralComp are somehow related or that MedPlus is leaving the worker's compensation industry, among other things.

Upon discovering initial facts, MedPlus and Harmony immediately placed Stephens and Dawson on administrative leave and subsequently terminated them. Upon being placed on leave, Stephens and Dawson were instructed to immediately stop accessing the companies' databases, return the companies' records, and relinquish access to the companies' systems, including email. MedPlus and Harmony also instructed CentralComp and Unified to cease and desist from acting in concert with Stephens and Dawson, and to preserve all relevant evidence.

Instead, Stephens, Dawson, and others acting on behalf of CentralComp and/or Unified began accessing the systems of MedPlus and Harmony and altered and/or destroyed evidence of their wrongdoing. Moreover, Stephens and Dawson refused to return company information or otherwise cooperate in reducing the ongoing harm to Plaintiffs and their customers. A TRO and PI is critical to stop Defendants in their tracks and salvage crucial company and client information necessary to limit the business interruption and continue customer service. The following summarizes Defendants' scheme:

*First,* Stephens and Dawson participated in the formation and development of the Corporate Defendants, which are direct competitors of MedPlus and Harmony. They conspired with these Corporate Defendants to divert and usurp the customers, business, opportunities, resources and employees of MedPlus and Harmony. To support their efforts, Defendants made

misrepresentations to employees and customers about, *inter alia*, the viability of MedPlus and its affiliation to CentralComp and Unified. As just one egregious example, Stephens recently instructed a MedPlus sales representative that he solicited to join CentralComp to represent to MedPlus customers that MedPlus was moving out of the workers' compensation industry and CentralComp was formed to take over its referrals. When customers expressed confusion, Stephens instructed the CentralComp sales representative to double down on this false representation by writing a letter to customers on MedPlus's letterhead and, as President of MedPlus, stating as follows:

> **MedPlus Health Solutions was recently purchased and is going in a different direction with their business model. A new company has been formed in order to facilitate the referrals that MedPlus has been coordinating. The new company name is CentralComp Services LLC . . . .**

Carrington Aff., ¶¶ 11–14 & Ex. A; Hanrahan Aff., ¶ 16 & Ex. A. Stephens made these false statements and directed others who were unaware of the truth to do so, with knowledge that there was no "recent[] purchase" or "different direction" warranting transfer of business to CentralComp.

*Second,* Stephens and Dawson participated in the formation and ownership of numerous other provider network companies ("Affiliated Networks") that were operated by Plaintiffs' employees, which Stephens and Dawson funded by paying them for the same services that Plaintiffs were already paying these employees to handle. Stephens and Dawson referred business from Plaintiffs' customers to these Affiliated Networks and instructed MedPlus and Harmony employees to do the same. Also troubling, CentralComp and Unified utilized these same Affiliated Networks to fulfill or process the business that they had usurped from MedPlus and Harmony. This conduct further lined the pockets of Stephens and Dawson,

siphoning revenue away from MedPlus and Harmony.

**Third,** Defendants improperly solicited employees of MedPlus and Harmony to work for or alongside the Corporate Defendants and Affiliated Networks. By poaching and installing Plaintiffs' employees in key positions throughout their web of complicit companies, Stephens and Dawson were able to conceal their deception and illegal conduct. Defendants' solicitation of Plaintiffs' staff continues unabated, with several employees in critical positions having just resigned or refused to provide pertinent information to prevent business interruption.

**Fourth,** Defendants have used the resources, confidential and commercially-sensitive information, and intellectual property of Plaintiffs to further their conspiracy, all without authorization. Defendants are, *e.g.*, misappropriating and/or falsely advertising Plaintiffs' trade names, trademarks, trade secret customer information, and business know-how to divert customers to the Corporate Defendants and other entities involved in their scheme.

**Fifth,** the Individual Defendants have been pervasively accessing, disrupting, and altering the computer systems and files of Plaintiffs without authorization and for improper means. Not only did they pilfer Plaintiffs' data to facilitate the diversion of business, but they have brazenly continued to access and alter Plaintiffs' files even ***after*** they were suspended from employment and explicitly instructed not to access the systems. Unsurprisingly, the files they are accessing and altering relate directly to customers and companies that appear involved in their fraudulent scheme. Defendants have also refused to comply with Plaintiffs' demands for the return of company property and information. Stephens left the country but continued to access and alter Plaintiffs' files from abroad; Dawson never returned a work laptop he admittedly used for the past several years, claiming he recently discarded it.

4

Defendants' foregoing conduct is irreparably harming Plaintiffs in a number of ways. Defendants continue to make false statements to customers and employees and refuse to correct the misstatements, causing customers to leave MedPlus and Harmony. These acts have irreparably harmed MedPlus's and Harmony's reputations. Defendants have poached MedPlus and Harmony employees and diverted them to companies owned by the Individual Defendants. Defendants have infiltrated Plaintiffs' system and are destroying and/or altering files and evidence to cover their tracks, while also refusing to return critical company information necessary to prevent business interruption. Their goal is undeniable: They intend to delay the investigation and a just resolution of Plaintiffs' claims and prevent Plaintiffs from uncovering the full extent of their extreme and willful misconduct. This court should immediately stop them before Plaintiffs, their customers and employees are further harmed.

## CONDUCT TO BE ENJOINED

Plaintiffs request that this Court enjoin Defendants from all actions described in full in Plaintiffs' concurrently filed Proposed Order.

## FACTUAL BASIS FOR MOTION

The facts underlying this Motion are set forth in greater detail in Plaintiffs' Verified Complaint and the Affidavits and Declaration filed herewith and cited herein.

### A.     Background Re Stephens, Dawson, MedPlus, and Harmony

On March 31, 2016, Stephens and Dawson sold MedPlus and Harmony to investors at a company called AudRx. Kennedy Aff., ¶ 2. Stephens and Dawson stayed on as executives of the respective companies and entered into employment agreements (the "Employment Agreements"). Stephens was designated "President of the MedPlus Division," and Dawson

5

was designated "President of the Harmony Hearing Services Division." *Id.*, ¶ 3. The Employment Agreements prohibited them from competing with, disparaging, or soliciting the employees of Plaintiffs for two years after termination of their employment. *Id.,* ¶¶ 3–6 & Exs. A & B (Employment Agreements) at ¶¶ 6i(i), 6i(ii), 7(a)(i), 7(a)(ii), 7(a)(iii). On February 28, 2018, Audiology purchased MedPlus and Harmony from AudRx, after which Stephens and Dawson remained in their respective roles. *Id.*, ¶¶ 4–5 & Ex. C (Purchase Agreement and Disclosure Schedule) at, *e.g.*, Schedule 3.13 ¶¶ 25–26.

### B.   Evidence of Misconduct

#### 1.   Defendants Divert Business to Corporate Defendants

##### i)   CentralComp and Unified Are Formed To Divert Business

CentralComp provides the same claims processing services as MedPlus. Carrington Aff., ¶ 8; Perrin Decl., Ex. A. CentralComp was formed on Feb. 6, 2018—weeks before Audiology's acquisition of MedPlus—with a principal address in Franklin, TN, near MedPlus's office and Dawson's residence. Perrin Decl., Ex. B. Washington State Department of Revenue public records also identify a CentralComp Services LLC managed by Jonathon Tsourakis, a friend of Stephens. Perrin Decl., Ex. C; Carrington Aff., ¶ 8. Plaintiffs are informed and believe that CentralComp is owned by Mr. Tsourakis and Stephens and/or Dawson. Carringon Aff., ¶ 8; Hanrahan Aff., ¶¶ 3 & *passim*.

Unified provides similar hearing-related services to Harmony. Perrin Decl., Ex. D; Davis Aff., ¶ 2. Unified was formed on Feb. 7, 2018—the day after the formation of CentralComp. Unified's public records list its managers as CentralComp Services LLC in Florida and Jon Tsouraksi. Unified's principal addresses have been in Temple Terrace and St.

Petersburg, FL, near MedPlus's mailing address and Stephens's residence in Tampa. Perrin Decl., Exs. E & F. Plaintiffs are informed and believe that Unified is also owned by Stephens and/or Dawson. Davis Aff., ¶¶ 2–4.

ii) **Defendants Divert Plaintiffs' Business to CentralComp and Unified Using MedPlus and Harmony Employees and Resources and False Statements**

Ever since CentralComp and Unified were formed in early 2018, Stephens and Dawson have engaged in concerted efforts to solicit MedPlus and Harmony customers directly or through their employees.

While employed by MedPlus and Harmony, Stephens and Dawson ran meetings for CentralComp and developed the business of CentralComp and/or Unified, directly pursued competing business and customer opportunities for these companies, and made false statements to try to persuade customers to divert MedPlus's business to the Corporate Defendants. Carrington Aff., *passim* & Ex. A; Hanrahan Aff., *passim.* & Ex. A; Davis Aff., *passim*; Allman Aff., *passim* & Exs. A–C; Kennedy Aff., ¶¶ 8–11.

Throughout 2019, Stephens and Dawson, who were employed at MedPlus and Harmony at that time, engaged in a series of calculated and concerted efforts to siphon business from MedPlus and Harmony and toward CentralComp and Unified. They diverted significant referrals to CentralComp and Unified, causing customer confusion. Hanrahan Aff., ¶¶ 12, 16; Carrington Aff., ¶¶11–14; Davis Aff., ¶¶ 2–3; Allman Aff., *passim*. They hired sales representatives, including MedPlus's sales representatives Jennifer Carrington and Zoe Pearson—the daughter of a long-time MedPlus employee. Carrington Aff., ¶¶ 1–10; Hanrahan Aff., ¶ 7. Using false statements about their true intent, they directed Gail Pearson to introduce

7

Zoe Pearson to MedPlus customers. Hanrahan Aff., ¶ 7. They also hired away Katherine "Katie" Phelps McDonald to Unified Hearing and directed that she operate Unified and represent CentralComp's and Unified's interests even before she stopped working at MedPlus. Davis Aff., ¶¶ 2–4.

In addition, they falsely represented to customers that MedPlus was undergoing a "brand change" to CentralComp in the near future. Hanrahan Aff., ¶ 9, 16 & Ex. A. They made false and misleading statements on MedPlus letterhead as follows: **"To whom it may concern, MEDPlus Health Solutions was recently purchased and is going in a different direction with their business model. A new company has been informed in order to facilitate the referrals that MEDPlus has been coordinating. The new company name is CentralComp Services LLC** [(and providing tax ID and contact information)]." *Id.*; Carrington Aff., Ex. A.

By diverting business from MedPlus and Harmony to CentralComp and Unified, Defendants have all been enriched at the expense of MedPlus and Harmony, who have simultaneously been harmed by loss of their customers, their goodwill, and their reputation.

### 2.  Defendants Create Affiliated Networks To Further Their Scheme

Stephens and Dawson created a web of third-party provider network companies ("Affiliated Networks") to process worker's compensation referrals that MedPlus received from their customers and used MedPlus funds to pay these Affiliated Networks for services that MedPlus employees were already being paid to provide. These entities include at least: Allegiant Medical Network, LLC; Taled Medical Living, LLC; ION Healthcare Solutions, Inc.; Health Pay Services, LLC; and Waterford Comp Services, Inc. Plaintiffs are informed and believe that Stephens and Dawson have or had a personal financial stake in each of these

entities. Kennedy Aff., ¶¶ 8–11; Noel Aff., *passim*; Aldeen Aff., ¶¶ 2–6 & Ex. A.

Public records corroborate that each of these companies is linked to current and former employees of MedPlus and Harmony and these individuals and/or Stephens and Dawson. Perrin Decl., Exs. G–L; Noel. Aff., *passim* & Ex.; Aldeen Aff., ¶ 6 & Ex. A.

With the exception of one, each of these entities also maintains an address in or around Tampa, Florida or Murfreesboro, Tennessee—the same locations where MedPlus and Harmony maintain addresses. Perrin Decl., Exs. A–J; Noel Aff., ¶ 2. After forming these companies, Stephens and Dawson directly sent claims to the Affiliated Networks and instructed MedPlus and Harmony employees to do the same. Davis Aff. ¶¶ 2–3; Noel Aff., ¶ 3; Kennedy Aff., ¶¶ 8–11. Stephens and Dawson also misused Plaintiffs' funds by instructing Plaintiffs' employees to pay the Affiliated Networks regardless of whether they received payment from the customer for these services. Aldeen Aff., ¶ 4. Upon information and belief, Stephens and Dawson installed these Affiliated Networks to also serve CentralComp and Unified and process the very business that they usurped from Plaintiffs and using other full-time employees of MedPlus to do so.

Plaintiffs have been harmed by diversion of business that has not only threatened Plaintiffs' financial integrity but also created and continues to create interruption of Plaintiffs' ongoing business and its pending transactions with customers.

### 3. Defendants Wrongfully Solicit MedPlus/Harmony Employees to Corporate Defendants and Affiliated Networks

Defendants have also engaged in an extended course of conduct to solicit Plaintiffs' employees and business partners and install them in key positions at CentralComp and Unified. Ms. McDonald, for example, was solicited by Stephens and Dawson to leave Harmony and

join Unified, which she did as President in October 2019. Davis Aff., ¶¶ 2–4. In July 2019, Defendants held a CentralComp meeting and invited Plaintiffs' employees to join Defendants' employees to further the business of CentralComp and Unified Hearing. Hanrahan Aff., ¶ 6.

Stephens and Dawson also induced and assisted Plaintiffs' former employees—Jon Milnar, Keisha Maclin, and Kelsey Murphy—in establishing the Affiliated Networks and causing these employees to leave MedPlus to run these operations. Kennedy Aff., ¶ 8–11.

By using Plaintiffs' former and current employees to support CentralComp, Unified, and the Affiliated Networks and to compete with MedPlus and Harmony, Defendants have systematically depleted Plaintiffs of employees, resources and customers.

### 4. Defendants Falsely Represent, Disparage and/or Improperly Use Plaintiffs' Resources, Information, and Intellectual Property

Defendants also continue to misappropriate Plaintiffs' resources, confidential information, and intellectual property in myriad ways. *First,* Defendants have misappropriated confidential and commercially sensitive information concerning Plaintiffs' customers in order to target and successfully divert those customers from Plaintiffs to the Corporate Defendants. Aldeen Aff., ¶¶ 2–6; Davis Aff., ¶¶ 2–3. *Second,* on information and belief, Defendants continue to misappropriate Plaintiffs' vast and industry-proven business know-how in order to directly compete against Plaintiffs. This information includes, but is not limited to: information concerning Plaintiffs' claim processing practices, policies, and preferences; Plaintiffs' customer's business practices, policies, and preferences; and other information that MedPlus and Harmony generate, obtain, and use in the ordinary course of business.

*Third,* Defendants have, without authorization, used MedPlus's and Harmony's trade name and trademark "MedPlus" in advertising CentralComp and Unified to create a false

association between the companies. In fact, as of the date of this filing, **the "Our Services"** **portion of Unified's website still explicitly, falsely, and repeatedly refers to "MEDPlus".** Perrin Decl., Ex. D. Further, the Defendants have falsely claimed that MedPlus and Harmony are undergoing a "transition" to CentralComp and Unified, or that MedPlus and Harmony would be ceasing operations entirely. Carrington Aff., ¶¶ 11–13 & Ex. A. Meanwhile, Stephens and Dawson have concealed their true relationship with MedPlus, Harmony, CentralComp, and Unified from the customers and employees of those entities, and also from individuals associated with the Affiliated Entities. Davis Aff., ¶ 2; Carrington Aff., ¶¶ 5–9, 11, 13–14 & Ex. A; Noel Aff., ¶ 6; Hanrahan Aff., *passim*.

*Fourth,* Stephens and Dawson have disparaged MedPlus and Harmony to undermine and interrupt Plaintiffs' business. For example, Stephens recently directed letters to be sent on his letterhead falsely stating that MedPlus was leaving the workers' compensation industry and that referrals should be forwarded to CentralComp. Carrington Aff., ¶¶ 12–14 & Ex. A; Hanrahan Aff., ¶¶ 12, 16 & Ex. A. Plaintiffs are informed and believe that this conduct remains unabated.

### 5.    Stephens Improperly Accesses and Alters Plaintiffs' Computer Systems and Files

In early February 2020, as Plaintiffs began to discover Stephens' and Dawson's wrongdoing. Plaintiffs immediately launched an investigation.

On February 13, 2020, Plaintiffs met with Stephens in person and Dawson by telephone. During these meetings, Stephens and Dawson were notified of the investigation but refused to cooperate, return or even provide full access to MedPlus or Harmony Google suite of company records and emails in their possession, custody, or control. They also did not

11

immediately turn over the company computers they used to conduct business, or the credentials necessary to access and administer MedPlus's and Harmony's systems, including company emails. They were both placed on administrative leave effective immediately. Mikulka Decl., ¶¶ 5–6 & Exs. A–D.

During those meetings, again the next day, and on several occasions thereafter, Plaintiffs formally instructed Stephens and Dawson to cease-and-desist from all further harmful acts, including accessing, using, or disclosing any trade secrets or other confidential information belonging to MedPlus and Harmony or their customers. Plaintiffs also demanded that Stephens and Dawson immediately return all information and electronic media and provide administrator credentials to access MedPlus's and Harmony's respective systems, including Aplicor—which stores customer information, bills, invoices, payment information, and accounting files—and Google Suite—which hosts Plaintiffs' email servers and file sharing service. Plaintiffs also made similar demands upon CentralComp and Unified. *Id.*, ¶¶ 5–8 & Exs. A–G.

Not only did Defendants refuse to immediately comply with these requests, Stephens went further and took willful and affirmative steps to gain unauthorized access into Plaintiffs' systems to manipulate and destroy incriminating evidence for Defendants' benefit. For example, in the days following his suspension, Stephens logged into the Company's Google Drive without permission and specifically moved, deleted, and restricted permissions for files that specifically pertain to customers whose business is being diverted to the Corporate Defendants and the Affiliated Networks. Aldeen Aff., ¶ 7 & Ex. B; Perrin Decl., ¶¶ 18–19. Even when Stephens's and Dawson's attorney eventually provided certain company

credentials and property to Plaintiffs in piecemeal and incomplete fashion, Stephens and Dawson, and possibly those acting in concert with them, appear to have continued to withhold and tamper with company property and information. Perrin Decl., ¶¶ 18–22; Mikulka Decl., ¶¶ 7, 10, 11 & Exs. E, H, I.

To date, none of Defendants have confirmed that they have returned the requested customer information or Plaintiffs' non-public, confidential, and commercially-sensitive information. Nor have they offered to correct any misrepresentations made to third parties concerning the relationship between Plaintiffs and Defendants CentralComp and Unified.

*   *   *

Plaintiffs now bring claims against the Individual Defendants for breach of the Employment Agreements and violations of (i) the Defend Trade Secrets Act ("DTSA"), (ii) Florida's Uniform Trade Secrets Act ("FUTSA"), (iii) the Computer Fraud and Abuse Act ("CFAA"), and (iv) the Lanham Act, among other claims.

## LEGAL ARGUMENT

### A.  Legal Standards.

Plaintiffs' breach of contract claim against the Individual Defendants is governed by Nevada law. Kennedy Aff., Ex. A ¶ 15; Ex. B, ¶ 15. In all other respects, Florida law or federal law governs. *See, e.g.*, *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 n.3 (Fla. 1st DCA 1999). To obtain injunctive relief through a TRO or PI, Plaintiffs must show (1) a substantial likelihood of success on the merits; (2) irreparable harm; (3) that the threatened harm to the Plaintiff outweighs the potential damage to defendants; and (4) that an injunction would not be adverse to the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223,

13

1225–26 (11th Cir. 2005). The standard to obtain a temporary restraining order under Rule 65 are the same as for seeking a preliminary injunction. *See Dimare Ruskin, Inc. v. Del Campo Fresh, Inc.*, 2010 WL 2465158, at *1 (M.D. Fla. June 15, 2010) (*citing Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A*., 320 F.3d 1205, 1210 (11th Cir. 2003)); *see also* Local Rule 4.05(b)(4).

### B. The TRO and PI Should Be Granted.

The Court should grant Plaintiffs' Motion and preserve the status quo because the parties contractually agreed that a temporary restraining order would issue in exactly these circumstances. Kennedy Aff., Ex. A ¶ 10, Ex. B ¶ 10 ("In the event of a breach or threatened breach of any of Employee's duties and obligations under the . . . ["Confidentiality" and "Return of Property"] provisions . . . Employee agrees that the Company ***shall be entitled to a temporary restraining order*** . . . to prevent such breach or threatened breach because the harm that might result to the Company's business . . . may be irreparable") (emphasis added).

In any event, Plaintiffs meet the four-part test for a TRO and PI. Plaintiffs will likely prevail on all of their claims—even though just one claim is enough. Defendants continue to irreparably damage MedPlus and Harmony in myriad ways. The Individual Defendants have improperly accessed MedPlus's and Harmony's computer systems and files—where proprietary trade secrets and customer information live—without authorization. They continued these bad acts even after they were placed on administrative leave and warned in a cease and desist letter not to do so. And they have failed and refused to turn over all company property and proprietary information they misappropriated. As a result, MedPlus and Harmony have lost customers who are not coming back. They have lost valuable employees who are not

coming back. And their reputation among customers, prospective customers, and industry peers has taken a nosedive. Absent a TRO and PI immediately enjoining this conduct, MedPlus and Harmony may well fold.

They continue to poach MedPlus and Harmony customers and re-direct them to the Corporate Defendants—entities owned by the Individual Defendants. They continue to re-route business and claims to the Affiliated Networks—entities owned by the Individual Defendants. They continue to staff MedPlus and Harmony employees in high-level positions at the Corporate Defendants and the Affiliated Networks, earning their loyalty along the way. They have done all this and more under the guise that MedPlus and Harmony are pursuing a "brand change" and are affiliated with the Corporate Defendants and the Affiliated Networks—representations that are demonstrably false. Adding insult to injury, many of these bad acts took place while the Individual Defendants were still employed by MedPlus and Harmony, during normal business hours, while being paid by MedPlus and Harmony.

In contrast, Defendants would suffer no apparent harm in the face of a TRO or PI. Their business would continue as normal, with the caveat that they could no longer steal MedPlus's and Harmony's customers, employees, and trade secrets—obligations that their Employment Agreements and the law require, anyway. And the public interest is served by an order enjoining this kind of egregious and unlawful conduct.

### 1.  Plaintiffs will likely prevail on their claims.

"A likelihood of success on the merits is generally the most important factor when considering whether to grant a motion for preliminary injunction." *Int'l Hair & Beauty Sys., LLC v. Simply Organic, Inc.*, No. 8:11-cv-1883-30AEP, 2011 U.S. Dist. LEXIS 127336, at

*21 (M.D. Fla. Sep. 26, 2011). To satisfy this requirement, Plaintiffs must show "only *likely*, rather than *certain*, success." *Id*. (emphasis in original). This Court should issue a TRO and PI even if Plaintiffs demonstrate that they are likely to prevail on only **one** claim. *Solar Cells, Inc. v. True N. Partners, LLC,* No. 19477, 2002 Del. Ch. LEXIS 38, at *8 (Del. Ch. Apr. 5, 2002). In any event, Plaintiffs are likely to prevail on all of them.

**Breach of Employment Agreements.** Plaintiffs will likely prevail on their breach of contract claim against the Individual Defendants, under which Plaintiffs are required to show (1) the formation of a valid contract, (2) Defendants' breach, and (3) resulting damages. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).

The evidence overwhelmingly demonstrates that the Individual Defendants have breached at least *five* provisions in the validly executed Employment Agreements concerning non-compete, non-solicitation, non-disparagement, and non-disclosure of confidential information obligations and to act in good faith and fair dealing. For example, the Individual Defendants agreed not to "use or disclose to anyone except authorized personnel of the [Plaintiffs] . . . any confidential matters concerning the [Plaintiffs] or [their] . . . customers . . . including without limitation all confidential technical information of the [Plaintiffs], secrets, trade secrets, proprietary software, copyrights, lists of Clients, lists of employees . . . and other confidential business affairs," (Kennedy Aff., Exs. A–B (Employment Agreements) ¶ 6i(i)), but they have accessed MedPlus's and Harmony's customer lists, employee lists, and trade secrets and used this information to divert customers and employees into their competing ventures (Davis Aff., ¶ 3; Allman Aff., *passim* & Exs. A–C; Hanrahan Aff., ¶¶ 9, 12, 16; Carrington Aff., ¶¶ 11–12).

The Individual Defendants likewise agreed to "act in good faith and fair dealing toward [MedPlus and Harmony] . . . [and] refrain from a voluntary act or omission that would injure [MedPlus and Harmony]," (Kennedy Aff., Exs. A–B (Employment Agreements) at ¶ 7(a)(i)), but by their many dishonest acts, they have caused significant harm to MedPlus and Harmony (Davis Aff., ¶¶ 3; Allman Aff., *passim* & Exs. A–C; Aldeen Aff., ¶¶ 2–4; Hanrahan Aff., ¶¶ 9, 12, 16). Though evidence of this bad faith is mountainous, the Court need only look at the letters that they sent to current MedPlus customers:

> MedPlus Health Solutions was recently purchased and is going in a different direction with their business model. A new company has been formed in order to facilitate the referrals that MedPlus has been coordinating. The new company name is CentralComp Services LLC . . . .

Carrington Aff., ¶¶ 11–14 & Ex. A; Hanrahan Aff., ¶ 16 & Ex. A. Of course, these statements are demonstrably false. Allman Aff., ¶ 7.

Stephens and Dawson also agreed not to compete with MedPlus and Harmony for at least two years, (Kennedy Aff., Exs. A–B (Employment Agreements) ¶ 7(a)(ii)), and not to solicit MedPlus and Harmony customers and employees, (*id.*, ¶ 7(a)(iii)), but they have set up two competing ventures—the Corporate Defendants—and the Affiliated Networks to which they continue to funnel MedPlus and Harmony customers and employees. And they agreed to "promptly" return all MedPlus and Harmony property including "confidential memoranda, notes, lists (including, without limitation, mailing and Client lists), records and other confidential documents," (*id.*, ¶ 6(i)(ii)), but they have refused to do that, too. They continue to access MedPlus and Harmony computer systems and files without authorization, even though they have been terminated, and they still have not returned all property and electronic information despite explicit instructions to do so. Aldeen Aff. ¶ 7 & Ex. B; Perrin Decl., ¶¶

17–22.

**Violation of DTSA and FUTSA.** Plaintiffs will likely prevail on their claims for trade secret misappropriation. Both DTSA and FUTSA authorize a court to grant an injunction to prevent "actual" or "threatened" misappropriation of a "trade secret." 18 U.S.C. § 1836(b)(3)(A)(i); Fla. Stat. § 688.003(1).

A "trade secret"—broadly defined under both DTSA and FUTSA—means information that "derives economic value from not being readily ascertainable by others and . . . is the subject of reasonable efforts to protect its secrecy." *New Country Motor Cars of Palm Beach v. Beresford*, No. 17-80856-CIV-MARRA/MATTHEWMAN, 2019 U.S. Dist. LEXIS 147928, at * 17 (S.D. Fla. May 3, 2019); *see also* 18 U.S.C. § 1839(3). "Misappropriation" means the acquisition of a trade secret of another without consent and by "improper means," *e.g.*, through "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(5), (6); Fla. Stat. § 688.002(1), (2).

The customer information in Plaintiffs' database constitutes trade secrets under both DTSA and FUTSA. Plaintiffs store customer data in general including financial data, bills, invoices, and payment information, among other sensitive information and files, on their internal Aplicor and Google Drive applications. They also store non-public information concerning Plaintiff's claim processing practices, policies, billing requirements, fee schedules, and preferences; Plaintiff's customer's business practices, policies, and preferences; and other information that MedPlus and Harmony generate, obtain, and use in the ordinary course of business. Aldeen Aff. *passim*; Perrin Decl., ¶ 17.

MedPlus and Harmony keep this information confidential by password protection, access restriction, and appropriate confidentiality obligations. Perrin Decl., ¶ 17. Such information derives value by, among other things, allowing Plaintiffs to remain competitive in their industry. It is well-settled that non-public customer information like this constitutes protected trade secrets. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1558 (S.D. Fla. 1992), *aff'd*, 2 F.3d 405 (11th Cir. 1993) ("Regardless of who compiled the customer list, however, it is clearly protected . . . 'trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests subject to protection . . . .'").

The Individual Defendants continue to brazenly misappropriate these trade secrets by accessing MedPlus's and Harmony's internal systems and transferring this proprietary information to competitors like the Corporate Defendants, without authorization. Aldeen Aff. ¶ 7 & Ex. B; Perrin Decl., ¶¶ 18–22. The Corporate Defendants, which knew or should have known that the Individual Defendants procured these trade secrets by improper means, are equally culpable under the law. Fla. Stat. § 688.002(2)(a), (2)(b). These bad acts have caused Plaintiffs imminent and irreversible harm.

**Violation of the CFAA.** Plaintiffs will likely prevail on their CFAA claim. The CFAA allows Plaintiffs to bring a private right of action against Defendants for intentionally taking information from a "protected computer" without permission (18 U.S.C. § 1030(a)(2)(c)) and for intentionally accessing a protected computer without authorization, causing damage or loss of at least $5,000. 18 U.S.C. §§ 1030(a)(5)(B), (a)(5)(C), (g). A computer is a "protected computer" if it is used in "affecting interstate or foreign commerce or communication." *Id.* §

(e)(2). The Individual Defendants intentionally stole Plaintiffs' trade secrets from Plaintiffs' "protected computers,"—*e.g.*, computers that were used to conduct business with clients in multiple states. *See, e.g.*, *Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*, No. 13-60524-CIV-DIMITROULEAS, 2013 U.S. Dist. LEXIS 201882, at *16 (S.D. Fla. Aug. 9, 2013) (computer located in Florida and used to conduct business nationwide is a "protected computer"). Worse, they continue to delete information from these computers, including company files and e-mails demonstrating their culpability. By these brazen, intentional acts, Plaintiffs continue to lose an untold number of customers and suffer irreparable reputational damage. They have also incurred and continue to incur significant costs. Mikulka Decl., ¶ 13.

**Unfair and Deceptive Practices under the Lanham Act**. Plaintiffs will likely prevail on their Lanham Act claims for false advertising and false designation of origin. 15 U.S.C. § 1125(a). The elements of these claims are similar. A claim for false advertising requires Plaintiffs to establish that (1) Defendants' advertisements were false or misleading, (2) the advertisements deceived or could have deceived customers, (3) the deception was material, (4) the misrepresented service affects interstate commerce, and (5) injury. *Advantus, Corp. v. Sandpiper of Cal., Inc.*, No. 3:18-cv-1368-J-34JRK, 2019 U.S. Dist. LEXIS 169337, at *73 (M.D. Fla. Sept. 30, 2019). A claim for false designation of origin requires Plaintiffs to establish that (1) Defendants used a designation, (2) in commerce, (3) in connection with services, (4) where the designation was likely to cause confusion, mistake, or deception as to the affiliation of defendant with another person or as to the origin, sponsorship, or approval of Defendant's services, and (5) injury. *Heron Dev. Corp v. Vacation Tours, Inc.*, 16-20683-CIV-MORENO, 2017 U.S. Dist. LEXIS 196869, at *30 (S.D. Fla. Nov. 30, 2017).

Defendants' bad acts fall within these elements. In an effort to poach MedPlus's business, Stephens made multiple statements described herein, including writing a letter to MedPlus clients representing that MedPlus was leaving the worker's compensation and therefore CentralComp would be taking over MedPlus's customer referrals. *Id.* (stating that the first element is met where the commercial claims are "literally false"). He brazenly did so on MedPlus letterhead, using MedPlus's trademark, and signed the document under the title, "President – MedPlus Health Solutions." This letter caused confusion among customers, some of whom contacted MedPlus for clarification. Allman Aff., Exs. C, D. At worst, Stephens' representations confused customers to cause them to transfer their business to CentralComp, a competing entity. Plaintiffs have already lost customers as a result.

### 2.    Plaintiffs Are Suffering Irreparable Harm

Defendants' bad acts continue to cause Plaintiffs significant irreparable injury. Through Defendants' continued campaign of poaching Plaintiffs' customers and employees, sending Plaintiffs' business to the Affiliated Networks owned by the Individual Defendants, stealing confidential trade secrets from Plaintiffs' systems, and deleting evidence, among other things, Plaintiffs have lost customers and employees and continue to suffer irreparable industry-wide damage. As Florida courts recognize, there is no way to quantify these kinds of losses in dollars. *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) ("[T]he loss of customers and goodwill is an 'irreparable' injury.").

Even more, "Florida law ***presumes*** irreparable harm where [as here] trade secrets are misappropriated for unauthorized use." *Everest Nat'l Ins. Co. v. Rockhill Ins. Co.*, No. 8:16-cv-2803-T-35JSS, 2016 U.S. Dist. LEXIS 189685, at *16 (M.D. Fla. Oct. 5, 2016) (emphasis

added); *Dotolo v. Schouten*, 426 So. 2d 1013, 1015 (Fla. 2d DCA 1983) (Under Florida law, "irreparable harm and inadequate remedy at law should be presumed in an action for injunctive relief with respect to the misappropriation of a trade secret.")

Here, Stephens and Dawson accessed, transferred and retained valuable confidential information of the customers and business of Plaintiffs including in-process transactions and referrals. Aldeen Aff. ¶ 7 & Ex. B; Perrin Decl., ¶¶ 17–22. This is pertinent because without the information that Stephens and Dawson have refused to provide, it is impossible to determine what transactions and claims are pending, what accurate amounts the providers need to be paid, and what service remains outstanding to customers, and, importantly, the scope and details of discrepancies in past transactions.

The Defendants have also refused to correct their false statements to customers. *See* Mikulka Decl., Exs. C–H. Every day that they fail to do so, Plaintiffs suffer ongoing and increasingly severe harm to their reputation and business prospects. Defendants, meanwhile, continue to reap the benefits of the customer confusion they have sown.

### 3. The Balance of Harms Favors Plaintiffs.

The requested injunctive relief would not harm Defendants. It would do no more than preserve the status quo and prevent Defendants from destroying, retaining, using or disclosing Plaintiffs' confidential and trade secret information about their customers—obligations they are already bound to under the Employment Agreements and state and federal law.

By contrast, every day that Defendants are not immediately enjoined from poaching Plaintiffs' clients and employees, stealing trade secrets, ***deleting evidence***, and blocking Plaintiffs from system access means further substantial, imminent, and irreparable harm in the

form of lost confidential information, lost business and income, and lost goodwill. *Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674, 2007 U.S. Dist. LEXIS 98676, at *13 (S.D. Fla. Nov. 20, 2007) ("Destruction or moving of the evidence will greatly undermine Plaintiffs' ability to prosecute their case, and cause further irreparable harm to Plaintiffs."); *cf. AutoNation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004) (finding that the injury to the plaintiff outweighed any injury to the former employee considering (1) the value of the confidential business information to the employer; (2) that use of that information by a direct competitor would grant the competitor an unfair advantage).

The balance of harms weighs strongly in Plaintiffs' favor even if Defendants were *only* misappropriating Plaintiffs' trade secrets. *Everest Nat'l Ins. Co*, 2016 U.S. Dist. LEXIS 189685, at *16 ("[T]he Court finds that the balancing of harm favors Everest in this matter because the Court has been presented with evidence that Defendant Upton has absconded with confidential information and trade secrets and has taken employment with a direct competitor."). Of course, Defendants have done much more.

    4.    **The Public's Interest is Served by Protecting Plaintiffs' Trade Secrets, Preventing Unfair Competition, and Holding Parties to their Contractual Obligations.**

Florida policy favors the protection of businesses and their trade secrets. *Hatfield v. AutoNation, Inc.*, 939 So. 2d 155, 158 (Fla. 4th DCA 2006) ("[T]he existence of Florida's trade secret statute illustrates our state's interest in protecting businesses from theft of confidential information."). Indeed, Florida courts routinely hold that protecting a business' trade secrets from unlawful use and disclosure serves the public's interest. *See e.g., Alt. Med. Integration Grp., L.P. v. Langford*, No. 8:13-cv-2909-T-33AEP, 2013 U.S. Dist. LEXIS 164487, at *5

(M.D. Fla. Nov. 19, 2013) (holding a TRO would "serve the public interest by preserving faith in the agreements that businesses routinely make with their employees and by protecting trade secrets from unlawful use and disclosure."); *ACR Elecs., Inc. v. DME Corp.*, No. 11-62591-CIV, 2012 U.S. Dist. LEXIS 201353, at *38 (S.D. Fla. Oct. 31, 2012) ("Where an employee uses confidential information gained during his employment in breach of his duty of loyalty, it is appropriate to preliminarily enjoin the employee from further use of that information."). This is particularly true where, as here, the information is needed to service the pending referrals, transactions and pay legitimate providers and vendors.

Courts also recognize that the public is served by the enforcement of valid contracts, which Plaintiffs request here. *See, e.g.*, *Phoseon Tech., Inc. v. Healthcote*, No. 3:19-cv-2081-SI, 2019 U.S. Dist. LEXIS 221633, at *35 (D. Or. Dec. 27, 2019).

## CERTIFICATION OF EFFORTS TO GIVE NOTICE

The Verified Complaint, this Supporting Brief, the Declarations of Yuri Mikulka and Wade Perrin, and the sworn Affidavits of April Aldeen, Danielle Allman, Jennifer Carrington, Brianna Davis, Patrick Hanrahan, Kyle Kennedy, and Joseph Noel on file with the Court show that immediate and irreparable injury will result to Plaintiffs before Defendants can be heard in opposition to this TRO Motion. *See* Fed. R. Civ. P. 65(b)(1)(A).

Pursuant to Fed. R. Civ. P. 65(b)(1)(B), counsel for Plaintiffs certifies that it has made the required efforts to give notice to Defendants of the TRO Motion. These efforts are described in full in the Declarations of Yuri Mikulka and Wade Perrin.

## CONCLUSION

Plaintiffs respectfully ask the Court to grant this Motion for TRO and PI.

Dated: March 3, 2020                   Respectfully submitted,

                                       */s/ Thomas W. Davison*
                                       Thomas W. Davison
                                       Florida Bar. No. 55687
                                       **ALSTON & BIRD LLP**
                                       950 F Street, NW
                                       Washington, DC 20004-1404
                                       Tel: 202-239-3300
                                       Fax: 202-239-333
                                       tom.davison@alston.com

                                       Yuri Mikulka, (*pro hac vice* forthcoming)
                                       H. James Abe (*pro hac vice* forthcoming)
                                       Ethan J. Bond (*pro hac vice* forthcoming)
                                       **ALSTON & BIRD LLP**
                                       333 South Hope Street
                                       Los Angeles, CA 90071
                                       Tel: 213.576.1000
                                       Fax: 213.576.1100
                                       yuri.mikulka@alston.com
                                       james.abe@alston.com
                                       ethan.bond@alston.com

                                       Wade G. Perrin (*pro hac vice* forthcoming)
                                       **ALSTON & BIRD LLP**
                                       90 Park Avenue
                                       New York, NY 10016-1387
                                       Tel: 212.210.9400
                                       Fax: 212.210.9444
                                       wade.perrin@alston.com

                                       Miranda Lundeen Soto, Esq.
                                       Florida Bar No. 637963
                                       **SHUTTS & BOWEN LLP**
                                       200 South Biscayne Blvd, Suite 4100
                                       Miami, FL 33131
                                       Telephone: (305) 358-6300
                                       Facsimile: (305) 381-9982
                                       MLundeenSoto@shutts.com
                                       GDeleon@shutts.com

                                       ***Counsel for Plaintiffs***

25

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will automatically serve copies on all counsel of record in this case. I further certify that Defendants and Defendants' counsel were served via electronic mail and/or overnight delivery via the following methods:

David Lisko
Jason Baruch
**HOLLAND & KNIGHT LLP**
100 North Tampa Street
Suite 4100
Tampa, FL 33602
David.Lisko@hklaw.com
Jason.Baruch@hklaw.com

**PETER STEPHENS**
8028 Sharon Drive
Tampa, FL 33617

**JASON DAWSON**
1991 McElroy Rd.
Readyville, TN 37149

**CENTRALCOMP SERVICES LLC**
Attn: Katherine McDonald and Jonathan Tsourakis
1113 Murfreesboro Rd., Ste. 106-324
Franklin, TN 37064

**UNIFIED HEARING SOLUTIONS LLC**
C/O CORPORATE CREATIONS NETWORK, INC
11380 Prosperity Farms Road #221E
Palm Beach Gardens, FL 33410

Dated: March 3, 2020                    Respectfully submitted,

                                        */s/ Thomas W. Davison*
                                        Thomas W. Davison

                                        ***Counsel for Plaintiffs***

26