**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AUDIOLOGY DISTRIBUTION LLC DBA HEARUSA, MEDPLUS HEALTH SOLUTIONS, LLC, and HARMONY HEARING SERVICES LLC,**

      **Plaintiffs,**

**v.**                                                             **Case No: 8:20-cv-499-MSS-TGW**

**PETER STEPHENS, JASON DAWSON, and PHIL VALDENS, as individuals, CENTRALCOMP SERVICES LLC, a Tennessee Limited Liability Company, UNIFIED HEARING SOLUTIONS LLC, a Florida Limited Liability Company, PENSER NORTH AMERICA, INC., a Washington Corporation, LOVE AND LUCK ENTERPRISES LLC, a Florida Limited Liability Company, HEALTH PAY SERVICES LLC, a Florida Limited Liability Company, and PROFESSIONAL SERVICES SOLUTION OF FLORIDA LLC, a Florida Limited Liability Company,**

      **Defendants.**

_____

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter is before the Court on the Motion for Preliminary Injunction ("Motion")

filed by Plaintiff Audiology Distribution LLC dba HearUSA ("Audiology") and its wholly

owned subsidiaries MEDPlus Health Solutions, LLC ("MEDPlus") and Harmony Hearing

Services LLC ("Harmony"), pursuant to Federal Rule of Civil Procedure 65 and Local Rule

4.06, seeking to enjoin the conduct of Defendants Peter Stephens ("Stephens"), Jason

Dawson ("Dawson"), CentralComp Services LLC ("CentralComp"), and Unified Hearing Solutions LLC ("Unified Hearing") (collectively the "Injunction Defendants"). (Dkt. 6)

Having considered Plaintiffs' Verified Complaint, the Motion for Preliminary Injunction, the sworn affidavits submitted with the Motion for Preliminary Injunction, Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction, the Injunction Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction, the Injunction Defendants' Response to Plaintiffs' Supplemental Memorandum in Support of Motion for Preliminary Injunction, the evidence of record, and the oral arguments and testimony provided during the hearings held on March 6, 2020 and June 18, 2020, the Court makes the following findings:

(1) Plaintiffs and Defendants Stephens and Dawson contractually agreed that an injunction would issue for breach of either the "Confidentiality" or "Return of Property" provisions in their employment agreements. Stephens and Dawson breached both by disclosing confidential customer lists, employee lists, and other sensitive information to third parties without authorization. Stephens and Dawson have also failed and refused to return all company property requested by Plaintiffs.

(2) Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of their claims for breach of contract, misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. §§ 688.001 *et seq.*, the Computer Fraud and Abuse Act ("CFAA"), and false advertising and unfair competition under the Lanham Act, among other claims asserted in the Complaint. Specifically, Plaintiffs have demonstrated a substantial likelihood that:

i. Defendants Stephens and Dawson breached their employment agreements as follows:

(a) Defendants Stephens and Dawson violated the "Confidentiality" provision by accessing MEDPlus' and Harmony's customer lists, employee lists, customer information, financial and business information, and trade secrets and using this information to divert customers and employees into their competing ventures;

(b) Defendants Stephens and Dawson violated the "Good Faith and Fair Dealing" provision by secretly diverting MEDPlus and Harmony customers and employees under false pretenses to competing ventures owned by Stephens and Dawson, misappropriating Plaintiffs' trade secrets and confidential information for personal financial gain, and accessing and destroying company files and evidence of their wrongdoing, even after they were placed on administrative leave and ultimately terminated. In more than one instance, Stephens brazenly delivered the following letter to current MEDPlus customers:

> To whom it may concern,
> MEDPlus Health Solutions was recently purchased and is going in a different direction with their business model. A new company has been formed in order to facilitate the referrals that MEDPlus has been coordinating. The new company name is CentralComp Services LLC . . . .

Thank you,

Pete Stephens.

In fact, MEDPlus was not and is not altering its business model and is completely unaffiliated with CentralComp—a direct competitor of MEDPlus;

(c) Defendants Stephens and Dawson violated the "Non-Compete" provision—which bars Stephens and Dawson from competing with MEDPlus and Harmony, respectively, for up to two years after termination—by the acts described above;

(d) Defendants Stephens and Dawson violated the "Non-Solicitation" provision by soliciting MEDPlus and Harmony customers and employees to join competing ventures owned by Stephens and Dawson. They did this while Stephens and Dawson were still MEDPlus and Harmony employees, respectively, and while they were on MEDPlus's and Harmony's respective payrolls;

(e) Defendants Stephens and Dawson violated the "Return of Property" provision by refusing to turn over all company e-mails and files demanded, some of which have been destroyed;

(f) Defendants Stephens and Dawson violated the "Non-Disparagement" provision by disparaging the reputation of MEDPlus and Harmony.

ii.	The Injunction Defendants have, in violation of DTSA and FUTSA, misappropriated and continue to misappropriate MEDPlus and Harmony customers and trade secrets—including confidential customer and employee lists and well-established business know-how—and re-direct them to Defendants CentralComp Services LLC ("CentralComp") and Unified Hearing Solutions LLC ("Unified Hearing")—entities formed by or owned in part by Stephens and Dawson;

iii.	The Injunction Defendants have, in violation of the CFAA, accessed Plaintiffs' "protected computers" after Stephens and Dawson were placed on administrative leave and ordered not to access Plaintiffs' systems, and used information on these protected computers to divert business and claims to CentralComp and Unified Hearing and to a network of claims processing entities owned in full or in part by Stephens and Dawson (the "Affiliated Networks");

iv.	The Injunction Defendants have, in violation of the Lanham Act, deceived MEDPlus customers by falsely claiming that MEDPlus was undergoing a "brand change" to CentralComp. Stephens did this on MEDPlus letterhead, using MEDPlus' trademark, and using Stephens' title as "President-MEDPlus Health Solutions." In fact, Stephens knew that MEDPlus was not and is not undergoing a brand change and is not in any way affiliated with CentralComp, a direct competitor of MEDPlus. Plaintiffs have lost substantial revenue from

at least one customer as a result, and their industry reputation has suffered;

(3) Plaintiffs have made a showing of substantial likelihood that they will continue to suffer imminent, irreparable harm if the Injunction Defendants are not enjoined from performing these acts, specifically that: MEDPlus and Harmony have lost significant revenue that was diverted from many of their largest customers; they have also lost key employees to competing ventures owned by Stephens and Dawson; their reputation among customers, prospective customers, and industry peers has been irreparably damaged and, absent a Preliminary Injunction enjoining this conduct for the pendency of this litigation, they will continue to be harmed given the pernicious nature of the scheme that the Injunction Defendants engaged in and their initial refusal to discontinue the conduct and retract the false statements.

(4) The injury to Plaintiffs which will follow if the requested injunctive relief is not granted outweighs any harm the Injunction Defendants might suffer if it is granted;

(5) Granting the Preliminary Injunction in this case will serve the public interest; and

(6) This Court has personal jurisdiction over Dawson.

WHEREFORE, for good cause shown, Plaintiffs' Motion for Preliminary Injunction is **GRANTED IN PART and DENIED IN PART.** The Court **DENIES** the Motion without prejudice to the extent it requests a freeze of any assets. The Court **GRANTS** the Motion as set forth herein. **IT IS HEREBY ORDERED** as follows:

The Injunction Defendants, and anyone acting in concert with them or on their behalf, must *immediately*:

1. Stop misrepresenting to third parties that MEDPlus or Harmony are undergoing a brand change, leaving the worker's compensation industry or changing direction, or are in any way affiliated with CentralComp and Unified Hearing and/or the Affiliated Networks, including but not limited to Health Pay Services LLC ("Health Pay Services"); Taled Medical Living, LLC ("Taled"); Waterford Comp Services, Inc. ("Waterford"), Innovative Claim Solutions, Inc. ("ICS"); Love & Luck Enterprises; Magnetic Imaging Services, Inc. ("MIS"); Professional Services Solution of Florida LLC ("Professional Services"), until final determination of the present action;

2. Within three (3) days of the Order, deliver to counsel for Plaintiffs all outstanding customer information that they have transferred from MEDPlus and/or Harmony to themselves or others;

3. Stop the further transfer of MEDPlus and/or Harmony customer information to themselves, the Affiliated Networks, or others including any personal account or repository of information the Injunction Defendants retain (digitally or through physical means) until final determination of the present action;

4. Stop accessing the company databases and emails of MEDPlus and Harmony until final determination of the present action, and within fourteen (14) days of the Order, identify all database systems that have been used

to conduct MEDPlus and Harmony business, to the extent this has not been completed in compliance with the previous TRO;

5. Within one (1) day of the Order, provide Plaintiffs with full and complete access and administrator rights to Plaintiffs' Google Suite account, Plaintiffs' Aplicor, any other databases belonging to Plaintiffs used to conduct MEDPlus and Harmony businesses by Health Pay Services and Professional Services, and the Affiliated Networks, and any other applications belonging to Plaintiffs;

6. Within three (3) days of the Order, return all devices belonging to Plaintiffs and company records and data of MEDPlus and Harmony and provide correct administrator credentials so that Plaintiffs can access these devices, including but not limited to those devices being used by Stephens and Dawson, and the former employees of MEDPlus and Harmony who are now working for CentralComp and Unified Hearing, such as Brad Bodenmiller and Katie Phelps McDonald, Jessica Pelfrey, and other former employees of MEDPlus and Harmony who work at Health Pay Services, Professional Services, and other entities in the Affiliated Networks;

7. Within three (3) days of the Order, return checks and mail that were addressed to or by MEDPlus and Harmony or any facsimile or emails from customers or any third parties to MEDPlus or Harmony and continue to do so as they are received until final determination of the present action;

8. Stop converting to their own use and to the use of third parties MEDPlus' and Harmony's trade secrets and confidential information, specifically

customer information, transaction details, and financial information obtained

through access to Plaintiffs' databases and applications, and return any in

the Injunction Defendants' possession until final determination of the

present action;

9. Stop the removal of any content from their personal databases, however

stored (including via computer, phone, or other electronic or physical

means), until final determination of the present action;

It is **FURTHER ORDERED** that Defendants Stephens and Dawson and anyone

acting in concert with them or on their behalf, must *immediately*:

1. Stop misrepresenting or disparaging MEDPlus to MEDPlus' customers until

final determination of the present action;

2. Stop soliciting directly or indirectly Plaintiffs' customers to transfer their

business to CentralComp and Unified Hearing, or the Affiliated Networks

until final determination of the present action;

3. Stop soliciting directly or indirectly Plaintiffs' employees to join

CentralComp and Unified Hearing and/or the Affiliated Networks, including

but not limited to Health Pay Services, Taled, and Waterford until final

determination of the present action;

It is **FURTHER ORDERED** that Plaintiffs are required to post with the Clerk of this

Court a cash or surety bond in the amount of $50,000.00 for the duration of the

preliminary injunction to pay any costs and damages sustained by the Injunction

Defendants if they are found to have been wrongfully enjoined or restrained. See Fed. R.

Civ. P. 65(c). Such bond shall be posted **IMMEDIATELY**.  Plaintiff shall file Notice with

the Court following its posting of the bond.

      **DONE and ORDERED** in Tampa, Florida this 7th day of July, 2020.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any Unrepresented Party